FILED
Scott L. Poff, Clerk
United States District Court

By Ericka Sharpe at 1:15 pm, Oct 17, 2018

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF GEORGIA
# SAVANNAH DIVISION

| | |
|---|---|
| JAMES LEWIS WARD, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CV418-119 |
| ) | |
| JOHN T. WILCHER, *Sheriff*, *et al.*, ) | |
| ) | |
| Defendants. ) | |

## REPORT AND RECOMMENDATION

Proceeding *pro se* and *in forma pauperis*, doc. 3, pre-trial detainee James Lewis Ward brings this 42 U.S.C. § 1983 action against various Chatham County Sheriff's Office staff contending that his Eighth Amendment rights have been violated. The Court now screens his Complaint to determine whether it states a valid claim, as required by 28 U.S.C. § 1915A.[1]

---

[1] During the early screening required by § 1915A, the Court must identify "cognizable claims" in the prisoner's complaint and dismiss any claim that is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief.

Because the Court applies Fed. R. Civ. P. 12(b)(6) standards in screening a complaint pursuant to § 1915A, *Leal v. Ga. Dep't of Corr.*, 254 F.3d 1276, 1278-79 (11th Cir. 2001), allegations in plaintiff's Complaint are taken as true and construed in the light most favorable to him. *Bumpus v. Watts*, 448 F. App'x 3, 4 n.1 (11th Cir.

I. **Background**

Ward alleges, in full and in unedited form, that

> I am filing this suit on the grounds of cruel and unusual punishment since March 3, 2017 I have been housed in unit 2D wing, which is a segregation issolation dorm on administrative segregation when if I am to remain on lock down on administrative-segregation I soppose to be in unit2 Cwing where this facility house administrative-lockups due to the fact that im being house in 2D im not allowed sheets and only issued 1 blanket, and forced to sleep on a bare plastic matress I am not allowed to get juice or coffee during feedoff like the rest of the facility I am not allowed to get commencary or books. Im not allowed to use the phone or get visitation. Im not allowed to get a net-bag, so I cant send out laundry and force to hand wash my clothing. "Whites". I am not allowed to get a rag or towel unless im in the shower when I soppose to be issued those items like the rest or the facility. I am tired of living under these extreme measures.

Doc. 1 at 5.[2] While he concedes he was originally put in the unit for fighting, his 20 days have long since expired. Doc. 6 at 4. His appeals to the jail's classification officers to be re-housed in a different unit have been denied or gone unanswered. *Id.*; *see also id.* at 7 (April 24, 2017, letter explaining "Dear Mr. Ward . . . The decision to keep you in 2D on

---

2011). Conclusory allegations, however, fail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (discussing a Rule 12(b)(6) dismissal).

[2] He has also sent this Court a letter seeking legal advice. Doc. 6 ("requesting info on how long can formal charges fild [sic] against me after the date of arrest, how long after a crime can you be arrested for a crime," *etc.*). This Court is not (nor can it serve as) plaintiff's personal law library *or* his appointed counsel. Any questions regarding state charges levied against him either must be directed to his counsel in his state criminal case or, if he is proceeding pro se in that case, are his responsibility to figure out through his own legal research.

Admin Segregation was made by Jail Administration, which you were already informed.")

## II. Analysis[3]

It is well established that "the Constitution does not require elaborate prisoner classification at the jail level." *Jones v. Diamond*, 594 F.2d 997, 1016 (5th Cir. 1979), *on reh'g*, 636 F.2d 1364 (5th Cir. 1981).[4] Indeed, "[n]ot having been convicted, pretrial detainees are all on the same footing and, in the absence of some special circumstance, are entitled to no different treatment than that accorded to others in the same class." *Id.*, 594 F.2d at 1016. Prison officials may make certain classification choices based on security and other concerns without violating the Constitution. "A detainee with a notorious record as a bank robber may not be entitled to as lenient security conditions as someone serving a misdemeanor sentence," and deciding how to classify a

---

[3] Although it is unclear whether plaintiff has *fully* exhausted his administrative remedies, at this stage of the proceedings dismissal for failure to exhaust would be improper. *See Cole v. Secretary, Department of Corrections*, 451 F. App'x 827, 828 (11th Cir. 2011) ("The exhaustion requirement is an affirmative defense, and a prisoner is not required to plead or demonstrate exhaustion in his complaint") (citing *Jones v. Bock*, 549 U.S. 199, 216 (2007)).

[4] The Eleventh Circuit has adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981).

particular detainee "is confided to the sound discretion of prison officials, under state law." *Id*. A change in the level of custody within a prison system does not infringe upon or implicate a liberty interest within the meaning of the Due Process Clause, for the States typically have not created such a liberty interest for prisoners. *See Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976) (prison officials have full discretion to control conditions of confinement, including prisoner classification); *Kramer v. Donald*, 286 F. App'x 674, 676 (11th Cir. 2008) (no constitutionally protected liberty interest in being classified at a certain security level or housed in a certain prison).

"[O]nly when the officials fail to protect prisoners from homosexual attacks, personal violence, or unnecessary contact with the contagiously ill" should the federal courts interfere. *Id*. Here, Ward complains he has been housed in an isolation-segregation unit by prison officials. Docs. 1 & 6. That decision, made for security, punitive, or other reasons, is well within their discretion and, given that he has shown nothing but his own discomfort at the restrictions of the unit, "the federal courts are [not] warranted in entering the classification picture." *Jones*, 594 F.2d at 1016. Any misclassification claim should be dismissed.

4

Ward also complains about the conditions of his confinement in administrative segregation. Doc. 1 at 5. He is deprived of flavored drinks at mealtime and as comfortable a bed as he would like, his phone and visitation privileges have been cut off, he only gets a towel to use for showers, and his laundry service has been suspended, forcing him to hand-wash his clothing. *Id.* These hardships are a far cry from the "punishment" condemned by the Constitution.

Absent a "formal adjudication of guilt in accordance with due process of law," a state does not have the authority to impose punishment. *Ingraham v. Wright*, 430 U.S. 651, 671-71 n. 40 (1977). Thus, to establish an unconstitutional condition of confinement, a pretrial detainee must demonstrate that the condition "amount[s] to punishment" in violation of the Due Process Clause of the Fourteenth Amendment. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979). However, in regard to providing pretrial detainees with "such basic necessities as food, living space, and medical care the minimum standard allowed by the due process clause is the same as that allowed by the [E]ighth [A]mendment for convicted persons." *Hamm v. DeKalb County*, 774 F.2d 1567, 1573-74 (11th Cir. 1985).

In evaluating a pretrial detainee's conditions of confinement, "a court must decide whether the detention officials intentionally imposed the restriction for a punitive purpose or whether it is reasonably incidental to a legitimate government objective." *Wilson v. Blankenship*, 163 F.2d 1284, 1291-92 (11th Cir. 1998). "If a restriction is not reasonably related to a legitimate purpose . . . a court may infer that the purpose of the government action is punishment." *Lynch v. Baxley*, 744 F.2d 1452, 1463 (11th Cir. 1984). A court must also be mindful that the "[l]oss of freedom of choice and privacy are inherent incidents of confinement" in jails, prisons, or other custodial centers detaining a person pending trial, and a "detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Wolfish*, 441 U.S. at 536-37.

Here, Ward has offered no explanation for why he was placed in administrative segregation. *See* doc. 1 at 5-6. But he has been kept in isolation-segregation for the past year, with various restrictions in place. *Id*. at 5. Plaintiff alleges that he is provided with adequate nutrition, just not the tasty drinks he would prefer. He is provided with showers,

but not towels or rags for other purposes. He is provided with a mattress, albeit not the most comfortable, and a blanket. He is deprived of regular laundry service, and instead must hand wash his clothing. His phone, visitation, library, and commissary privileges have also been restricted as part of his confinement in the isolation-segregation unit. None of those hardships, on their own, "constitute unconstitutional punishment, even if they are discomforting and are restrictions that the detainee would not have experienced had he been released while awaiting trial." *Wolfish*, 441 U.S. at 540. Ward must allege that they are punitive in nature, rather than incident to his placement in administrative segregation. *See Magluta v. Sample*, 375 F.3d 1269, 1274 (11th Cir. 2004). He has not done so. Doc. 1 at 5-6.

Mere placement in administrative segregation-isolation does not require an inference that the purpose of the detention is punitive. *Magluta*, 375 F.3d at 1274. It must be clear that the "punishments" complained of are not tied to a legitimate purpose, including the jail's "interest in maintaining jail security." *Wolfish*, 441 U.S. at 537; *id*. at 561 ("Ensuring security and order at the institution is a permissible nonpunitive objective, whether the facility houses pretrial detainees,

7

convicted inmates, or both."). The Court cannot determine, given the threadbare allegations of the Complaint, that the restrictions on Ward's enjoyment of his detention have been "imposed solely for the sake of punishment and without any apparent reason at all other than punishment." *Magluta*, 375 F.3d at 1276. Ward may amend his Complaint on this ground only to explain whether these restrictions are motivated only by jail staff's intent to punish, rather than some other legitimate purpose.[5]

It bears noting, however, that Ward seeks money damages for his discomfort and never mentions prospective or injunctive relief from the objected-to conditions. *See* doc. 1 at 6. The Prison Litigation Reform Act (PLRA) precludes a detainee from recovering compensatory damages "for constitutional violations [occurring in custody] unless he can demonstrate a (more than *de minimis*) physical injury." *Brooks v. Warden*, 800 F.3d 1295, 1307 (11th Cir. 2015); *Green v. Talley*, CV416-

---

[5] Ward complains that "if [he is] to remain on lock down on administrative-segregation" he should be housed in a different isolation-segregation unit, which apparently offers fewer restrictions. Doc. 1 at 5. This suggests that Ward knows the reason he continues to be housed in administrative segregation, but seeks remission of its more onerous restrictions. Thus he concedes -- albeit implicitly -- that his placement in administrative segregation was not without reason, and that the restrictions incident to that placement likely serve the jail's interest in maintaining jail security. *See Wolfish*, 441 U.S. at 537. If that is so, his claim is dead on arrival.

285, doc. 8 at n. 1 (S.D. Ga. May 5, 2017) (surveying case law to conclude that "in custody" has been read broadly in this Circuit to encompass "injuries suffered 'during custodial episodes, even if such custody occurred outside prison walls.'" (citing *Napier v. Preslicka*, 314 F.3d 528, 533 (11th Cir. 2002)); *see also* 42 U.S.C. § 1997e(e). Ward alleges no injury, much less a *de minimis* one, resulting from the prohibition on flavored drinks, laundry service, dishrags, and commissary and visitation privileges in Unit 2D. *See* doc. 1 at 5. He therefore cannot recover money damages for that alleged constitutional violation. *Brooks*, 800 F.3d at 1307. That being said, Ward might still recover nominal damages. *Id.*; *see, e.g.*, Pattern Civ. Jury Instructions 11th Cir. (2013) (for a Fourth Amendment Claim, the jury "may award $1.00 in nominal damages"). He may amend his Complaint to set forth his entitlement to nominal damages for his allegedly unconstitutional conditions of confinement.

For the reasons explained above, Ward's classification claim and claim for money damages should be **DISMISSED**.[6] He may, however,

---

[6] To the extent plaintiff believes he can resuscitate these claims, he remains free to submit an Amended Complaint if he believes that it would cure the legal and factual

amend his claim for nominal damages arising from the allegedly harsh conditions of his confinement to administrative segregation. Ward shall file his Amended Complaint **within 30 days of service of the Order** or face a recommendation of dismissal. Plaintiff is advised that his Amended Complaint will supersede the original Complaint and therefore must be complete in itself.[7] Once he files an Amended Complaint, the original pleading will no longer serve any function in the case.

Meanwhile, it is time for plaintiff to pay his filing fee. His PLRA paperwork reflects $31.90 in average monthly deposits. Doc. 5. He therefore owes a $6.38 initial partial filing fee. *See* 28 U.S.C. § 1915(b)(1) (requiring an initial fee assessment "when funds exist," under a specific 20 percent formula). Plaintiff's custodian (or designee) shall remit the $6.75 and shall set aside 20 percent of all future deposits to his account, then forward those funds to the Clerk each time the set aside amount reaches $10.00, until the balance of the Court's $350.00 filing fee

---

defects discussed above. *See Willis v. Darden*, 2012 WL 170163 at * 2 n. 3 (S.D. Ga. Jan. 19, 2012).

[7] *See Malowney v. Fed. Collection Deposit Grp*, 193 F.3d 1342, 1345 n. 1 (11th Cir. 1999) ("An amended complaint supersedes an original complaint"); *Varnes v. Local 91, Glass Bottle Blowers Ass'n of U.S. & Canada*, 674 F.2d 1365, 1370 n. 6 (11th Cir. 1982) ("As a general rule, an amended complaint supersedes and replaces the original complaint unless the amendment specifically refers to or adopts the earlier pleading").

has been paid in full.

The Clerk is **DIRECTED** to send this Report and Recommendation (R&R) to plaintiff's account custodian immediately. In the event he is transferred to another institution, his present custodian shall forward a copy of this R&R and all financial information concerning payment of the filing fee and costs in this case to plaintiff's new custodian. The balance due from plaintiff shall be collected by the custodian at his next institution in accordance with the terms of the payment directive portion of this R&R.

This R&R is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3. Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties. The document should be captioned "Objections to Magistrate Judge's Report and Recommendations." Any request for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge. The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. United States*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED**, this __17th__ day of October, 2018.

_____
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA